UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CASEY CRABTREE, on behalf of ) <br> HEATHER CRABTREE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> LIFE CARE CENTERS of AMERICA, ) <br> INC., ) <br> ) <br> Defendant. ) | 1:08-cv-444-SEB-TAB |

**ORDER ON PENDING MOTIONS**

This cause is before the Court on the Motion to Remand [Docket No. 12], filed on May 15, 2008, by Plaintiff, Casey Crabtree, on behalf of Heather Crabtree, pursuant to 28 U.S.C. § 1447(c) of the Federal Rules of Civil Procedure, and the Motion to Dismiss and Motion to Strike Jury Demand [Docket No. 10], filed on May 12, 2008, by Defendant, Life Care Centers of America ("Life Care"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This action was initially filed in Montgomery Circuit Court, but Life Care removed it to this court under 28 U.S.C. § 1441(a).

Casey Crabtree, on behalf of Heather Crabtree, brings these state common law claims alleging wrongful termination, breach of implied contract, tortious interference with a contract, and intentional infliction of emotional distress. Compl. ¶¶ 14-29. Life Care maintains that subject matter jurisdiction arises under both federal question

jurisdiction, 28 U.S.C. § 1331, and that federal ERISA law completely preempts state common law.  For the reasons detailed in this entry, we DENY Plaintiff's Motion to Remand and DENY Defendant's Motion to Dismiss.[1]

**Factual Background**

I.      **Substantive History**

Heather Crabtree began working for Life Care in October 2007.  Compl. ¶ 5.  Life Care offered a short term disability plan through Assurant, Inc.  Ms. Crabtree's plan was voluntary, for which she paid premiums that guaranteed her a percentage of pay for a set number of weeks.  Id. ¶¶ 6-7.  In late January 2008, Ms. Crabtree was hospitalized due to severe depression and suicidal tendencies.  She was subsequently released and prohibited from returning to work until February 4, 2008.  At that time, Ms. Crabtree informed Life Care of her condition.  Id. ¶¶ 8-9.

On February 6, 2008, Ms. Crabtree visited Life Care to have her supervisor complete the employer portion of the short term disability application.  However, Cynthia Stevens, one of Ms. Crabtree's supervisors, refused to fill out or sign the short term

---

[1] Under Seventh Circuit law, "[t]he general rule in ERISA cases is that there is no right to a jury trial because 'ERISA's antecedents are equitable,' not legal." McDougall v. Pioneer Ranch Ltd. Partnership, 494 F.3d 571, 576 (7th Cir. 2007); see also Patton v. MFS/Sun Life Financial Distributors, Inc., 480 F.3d 478, 484 (7th Cir. 2007) (noting that, in ERISA cases "the plaintiff has no right to a jury trial").  Accordingly, we GRANT Defendant's Motion to Strike Jury Demand.

disability application, using Ms. Crabtree's visit to inform her that she was terminated from her job.  Ms. Stevens also informed Ms. Crabtree that, because of her termination, Life Care was not required to fill out the short term disability application.  Id. ¶11, ¶12.

## II.    Procedural History

Ms. Crabtree initially filed her complaint in our court on February 18, 2008, asserting claims of breach of fiduciary duty, interference with protected rights under federal ERISA law, and intentional infliction of emotional distress under Indiana common law. (Feb. 18, 2008, Compl. ¶¶ 20-29).  Ten days later, on February 27, 2008, she filed a voluntary notice of dismissal without prejudice, pursuant to Rule 41(a)(1)(A) of the Federal Rules of Civil Procedure.

Less than a week thereafter, on March 4, 2008, Ms. Crabtree filed her complaint in the Montgomery Circuit Court, asserting identical factual allegations:  that Life Care violated her state common law rights by committing wrongful termination, breach of implied contract, tortious interference with a contract, and intentional infliction of emotional distress.  Compl. ¶¶ 14-29.  Life Care removed this case on the grounds of federal subject matter jurisdiction based on both federal question and diversity jurisdiction.

On May 15, 2008, Ms. Crabtree filed the Motion to Remand, now before us here, arguing that neither subject matter nor diversity jurisdiction exists here.  Ms. Crabtree

argues there is no diversity jurisdiction based on her stipulation at the time of removal that the damages she seeks do not satisfy the $75,000 amount in controversy requirement. Pl.'s Mot. Remand at 7.  Ms. Crabtree also maintains that her claims do not arise under federal question jurisdiction because the disability plan which she seeks to enforce falls under a safe harbor provision which precludes the application of federal ERISA law.  Life Care rejoins that Ms. Crabtree's claims, though pled as state common law claims, are entirely preempted by ERISA and thus are federal questions. Def.'s Resp. at 7.

## Legal Analysis

**I.      Standard of Review**

Plaintiff's Motion to Remand requires us to determine whether we have subject matter jurisdiction over Plaintiff's claims.  Pursuant to the Federal Rules of Civil Procedure, "[a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States."  28 U.S.C. § 1441(a).  District courts have original jurisdiction over federal questions – civil actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Additionally, original jurisdiction arises in diversity of citizenship actions where "the matter in controversy exceeds the sum or value of $75,000" and the parties are "citizens of different states."  28 U.S.C. § 1332(a).  Thus, a defendant's removal of an action from state court to federal court is proper if the

district court has original jurisdiction predicated on either diversity of citizenship or a federal question.

Courts interpret the removal statutes narrowly with the implicit understanding that a plaintiff is free to choose its forum. Illinois v. Kerr-McGee Chemical Corp., 677 F.2d 571, 576 (7th Cir. 1982). Doubts regarding jurisdiction, therefore, should be resolved in Plaintiff's favor. Jones v. General Tire & Rubber Co., 541 F.2d 660, 664 (7th Cir. 1976). The burden of establishing federal jurisdiction falls on the Defendant as the party typically seeking removal. Doe v. Allied Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993); see also Wilson v. Republic Iron & Steel Co., 457 U.S. 92, 42 (1921). Jurisdictional allegations must be supported by "competent proof," which means there must be a showing by "a preponderance of the evidence or proof to a reasonable probability that jurisdiction exists." Creel v. Fortis Benefits Ins. Co. et al., 2000 WL 1231558, *5 (S.D. Ind. August 21, 2000); see also NLFC Inc. v. Devcom Mid-America Inc., 45 F.3d 213, 237 (7th Cir. 1995).

Life Care seeks the dismissal of this action based on its failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). A party moving to dismiss bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1960 (2007) (citing Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("[At the

pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")). Thus, we grant a dismissal only if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic, 127 S. Ct. at 1974. In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true and construe all inferences that reasonably may be drawn from those facts in the light most favorable to the nonmovant. Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

We address each of these motions below.

## II.    Plaintiff's Motion to Remand

### A.    Diversity Jurisdiction

A cursory review of the Complaint, assisted by the parties' stipulation, yields a quick determination that this court lacks diversity jurisdiction over Ms. Crabtree's cause of action because the total amount of monetary relief she seeks does not equal or exceed $75,000. A plaintiff must satisfy both the diversity of citizenship and the amount in controversy requirements in order for the federal court to acquire jurisdiction pursuant to § 1332(a). 28 U.S.C. § 1332(a). The amount in controversy requirement is determined based on whether "a reasonable probability existed . . . [that] the jurisdictional amount in controversy requirement was satisfied at the time of removal." Harmon v. OKI Systems,

902 F.Supp. 176, 178 (S.D. Ind. 1995).  While post-removal evidence may be relied upon in determining the amount in controversy, plaintiffs may not "defeat removal by . . . changing the facts with a later disclaimer saying that the jurisdictional amount is not in controversy."  Id.

Here, Life Care initially sought removal in part based on diversity jurisdiction.  According to the allegations before us,  Ms. Crabtree is a citizen of Indiana, and Life Care has its principal place of business in Tennessee, and she had not stipulated or alleged any specific amount in controversy.  Compl. (Requested Relief ¶¶ 1-6).  However, Ms. Crabtree has now stipulated that she does not seek damages exceeding $75,000 in the aggregate for her claims (Pl.'s Mot. Remand, Exh. A) and has provided supportive calculations to that effect.  Mot. to Remand, at 6-7.  Life Care now concedes that "the amount in controversy for diversity jurisdiction is no longer established."  Def.'s Resp. at 6, n.5.  Thus, we conclude that jurisdiction over this case does not arise on diversity grounds.

### B. Federal Question Jurisdiction

#### 1. Federal Preemption Under ERISA

Life Care contends that Ms. Crabtree's state law claims actually present "federal questions" and thus are preempted by federal ERISA statues.  As a general rule, a court determines the existence of a federal question "by examining the plaintiff's well-pleaded

7

complaint" because it is settled law that "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1486 (7th Cir. 1996) (quoting Rice v. Panchal, 65 F.3d 637, 639 (7th Cir. 1995)). Thus, normally, the court looks solely to the face of the plaintiff's complaint to make this determination.

However, a major exception to the well-pleaded complaint rule is provided for by the complete preemption doctrine. The Supreme Court has ruled that "[o]ne corollary of the well-pleaded complaint rule . . . is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Ins. Co. v. General Motors Corp, 481 U.S. 58, 63-64 (1987). And the Seventh Circuit has held that "where Congress has completely preempted a given area of state law," federal subject matter jurisdiction exists "even if the complaint does not mention a federal basis of jurisdiction." Jass, 88 F.3d at 1486-87.

Section 502(a) of ERISA sets out the basis for civil actions brought under ERISA and Supreme Court precedent recognizes the doctrine of complete preemption as applicable to this provision, reasoning that ERISA policies would be completely undermined "if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." Metropolitan Life Ins. Co., 481 U.S. at 64-65. The Court also has noted that, pursuant to § 502(a) as well as the accompanying

legislative history, ERISA mirrors the Labor Management Relations Act which has also been made subject to preemption principles. Id. at 65-66.

The Jass decision by the Seventh Circuit provides the analytical template for determining whether a plaintiff's claim falls within the scope of § 502(a) of ERISA:[2]

> Three factors are relevant for determining whether a claim is within the scope of 502(a): (1) whether the "plaintiff [is] eligible to bring a claim under that section;" (2) whether the plaintiff's "cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via 502(a);" and (3) whether the plaintiff's "state law claim cannot be resolved without an interpretation of the contract governed by federal law."

Jass, 88 F.3d at 1487. Applying the Jass guidelines, we turn to the issue of whether Ms. Crabtree's state law claims are "really" based upon ERISA, which is to say, "whether the claim is best recharacterized as a 502(a)(1)(B) claim to recover benefits due under the terms of the plan." Id. at 1489.

Ms. Crabtree appears to concede that the first two prongs of the Jass analysis are satisfied here, namely, that she is eligible to bring a claim under section 502(a) and that her cause of action falls within the scope of an ERISA provision that she can enforce via section 502(a). In the affidavits filed in support of her motion to remand, both Ms.

---

[2]As a preliminary matter, the Jass court distinguished § 502(a), which provides for complete preemption, from § 514(a), which addresses the conflict preemption. Following the Supreme Court's decision that ERISA falls under the preemption doctrine, the Seventh Circuit has clarified that conflict preemption is not a basis for federal jurisdiction but is available "merely as a defense." Jass, 88 F.3d at 1487.

Crabtree and her representative, Casey Crabtree, state that Ms. Crabtree was a "participant" in the disability plan, which makes her eligible to bring a claim under section 502(a).

Clearly, Ms. Crabtree's cause of action also falls within the scope of an ERISA provision which she is authorized to enforce via §502(a).  Ms. Crabtree has alleged wrongful termination, breach of implied contract, tortious interference with a contract, and intentional infliction of emotional distress.  Compl. ¶¶ 14-29.  Courts have consistently held that such state law claims as these fall squarely within § 502(a) of ERISA.  In Taylor, for example, an employee of General Motors was terminated in connection with a dispute over the payment of benefits and the employee's alleged "severe emotional problems," in the form of "mental anguish caused by breach of . . . contract" as well as wrongful termination.  Taylor, 481 U.S. 58, 60-61 (1987).  The court held that these claims came within the scope of § 502(a) and that, despite there being only state claims, the suit was "necessarily federal in character by virtue of the clearly manifested intent of Congress."  Id. At 66-67; see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143-44 (1989) (holding that a state law wrongful discharge action in which the termination was connected to the desire to *avoid paying benefits* under a benefit plan is preempted by ERISA. (emphasis added).)

Ms. Crabtree also seeks to recover the value of all her lost benefits, amounting to 70% of her income or a maximum of $250 per week, for the entirety of the twenty-six

10

weeks period provided under the Plan. In analyzing such claims, other courts have routinely held that they are properly characterized as claims to recover the short term disability benefits a plaintiff claims are due, and as such they are precisely the type of claim that §502(a) authorizes plan participants to initiate. See Murphy v. Reliance Standard Life Ins. Co., 2004 WL 2191610, at *4 (N.D. Ill. Sept. 27, 2004) (finding that plaintiff's request seeking a declaration that he was entitled to certain sums in past benefits payments to be "more properly characterized as a denial of benefits claim under Section 502(a)"). Given the correctness of the parties' analyses in these two respects, we turn to the primary dispute between them: whether Ms. Crabtree's state law claims cannot be resolved without an interpretation of a contract governed by federal law.

### 2. The ERISA Safe Harbor Provision

The parties acknowledge that the short-term disability plan requires a judicial interpretation, but disagree as to whether the Plan is governed by federal law. Ms. Crabtree contends that the Plan is not covered by ERISA because it falls within ERISA's "safe harbor" provision, which permits application of state rather than federal law. Life Care rejoins that the Plan constitutes an "employee welfare benefit plan" and that it therefore does not fall within the safe harbor provision. Under ERISA, "employee welfare plan" is defined as:

> any plan, fund, or program . . . established or maintained by an employer or by an employee organization . . . for the purpose of providing its

>participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment [etc.].

29 U.S.C. § 1002(1)(A).

Query:  Did Life Care "establish or maintain" the benefit plan, so as to bring it within the reach of ERISA's protection? See Brundage-Peterson v. Compcare Health Services Ins. Corp., 877 F.2d 509, 510 (7th Cir. 1989).  According to Seventh Circuit precedent, "[i]f an employer offers no welfare benefit plan to its employees, but leaves each employee free to shop around for his or her own health (accident, disability, life, etc.) insurance, ERISA does not apply." Id.  In addition, an employer may limit its involvement to such a level that it essentially offers no welfare benefit plan, such as by doing no more than facilitating employees' choices for their coverage. Id. (holding that "the employer could take a few steps beyond [total non-involvement]" and still remain outside the scope of ERISA).

The Department of Labor regulations address the safe harbor provision by defining the circumstances when an employer is deemed not to have "established or maintained" a benefit plan within 29 U.S.C. § 1002(1)(A).  If an employer's actions fall within this definition. state law claims, as asserted by the plaintiff, can remain state law claims without their being construed as ERISA claims.  Under ERISA, the term "'employee

welfare benefit plan' . . . shall not include a group or group-type insurance program . . . under which:

>(1) No contributions are made by an employer or employee organization;
>
>(2) Participation in the program is completely voluntary for employees or members;
>
>(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
>(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).  Further, "coverage under ERISA should be liberally construed, while exemptions should be applied narrowly." Fox v. Special Agents Mutual Benefit Assoc., 2006 WL 3613308 *5 (S.D. Ind. 2006); see also Brundage-Peterson, 877 F.2d at 511 (disfavoring a "complicated, variable, case-by-case standard" that would create uncertainty).

The parties do not dispute that Life Care's disability plan satisfies the first, second, and fourth elements of the safe harbor regulation.  Regarding the third element, whether it is met "turns on employer neutrality." Creel v. Fortis Benefits Ins. Co., 2000 WL

1231558, at *4 (S.D. Ind. Aug. 21, 2000) (Tinder, J.). "If an employer exercises control over the plan such that the ideal of employer neutrality is offended, the plan will fail to satisfy element (3) of the regulation." Id. at 12. Endorsement occurs if "an objectively reasonable employee would conclude on the basis of the employer's actions that the employer had not merely facilitated the program's availability but had exercised control over it." Id. (quoting Johnson v. Watts Regulator Co., 63 F.3d 1129, 1135 (1st Cir. 1995).

An employer may perform minor ministerial tasks without compromising employer neutrality. Creel, 2000 WL 1231558, at *4; Brundage-Peterson, 877 F.2d at 510 (stating that the employer could take administrative steps such as "distributing advertising brochures, . . . answering questions . . . concerning insurance, or even deducting the insurance premiums from its employees' paychecks). However, the Seventh Circuit directs that the safe harbor exception to ERISA coverage is to be narrowly construed. Fox v. Special Agents Mutual Benefit Assoc., 2006 WL 3613308, at *5 (S.D. Ind. Sept. 19, 2006) (McKinney, C.J.) (quoting Brundage-Peterson, 877 F.2d at 511).

Our review of the Life Care disability plan persuades us that it does not qualify for ERISA's safe harbor protections. For example, Life Care has exercised substantial control and direction over the design of the disability plan. It is also the policyholder under the plan. Golden Aff. ¶ 3. Additionally, Life Care determined the eligibility

requirements for its employees. Specifically, Life Care directed that an employee must be working full time, be active at work, and have completed sixty days of continuous service in order to be eligible for the plan. Id. ¶ 5. Coverage ends following the conclusion of an employee's employment at Life Care. Id. ¶ 3. Further, Life Care amended the disability plan schedule effective January 1, 2006, to exclude coverage for such life events as marriage, divorce, death, and birth within one's family. Id. ¶ 5.

Life Care also played a significant role in the administration of the disability plan. After explaining and offering the disability plan to its employees through a video during their employee orientation programs, Life Care coordinates the filing of claims, facilitates appeals, collects missed deductions and reconciles payroll deductions for employees who have elected to have coverage. Golden Aff. ¶ ¶ 5-8. Life Care also establishes minimum benefit levels and maximum monthly payments. Id. ¶ 9.

Life Care's role in the administration of the disability plan places it outside of the safe harbor provision and within the coverage of ERISA. In similar cases, other judges of this court have also ruled that the actions of the employer take the plan outside the safe harbor provisions. For example, Judge McKinney ruled that the plan at issue fell outside of the safe harbor provision where the employer "worked on the design of various benefit programs," played an administrative role that suggested that it was "more than an intermediary that collects member premiums," and determined which employees were eligible to enroll. Fox, 2006 WL 3613308, at *6. Similarly, former District Judge Tinder

held that the plan at issue fell outside the safe harbor provision where the employer "controlled the amount of time a new employee would have to wait before becoming eligible" and "changed the . . . eligibility requirements." Creel, 2000 WL 1231558, at *4.

Ms. Crabtree cites the Seventh Circuit's decision in Brundage-Peterson to support her contention that the mere act of defining the terms of eligibility is not enough to destroy employer neutrality, arguing that the Court placed the plan in that case beyond the safe harbor protections *only* because the employer determined the eligibility requirements *and* paid a portion of the insurance premiums. Brundage-Peterson, 877 F.2d at 511 (stating that it is "especially clear" that the plan is outside the safe harbor provision "when in addition . . . the employer helps defray the employee's insurance cost.").

The explicit holding in the Brundage-Peterson decision, however, does not support Ms. Crabtree's interpretation. There the court stated that an employer "who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll" is outside the safe harbor provision. Id. Following that statement, the Court added that exclusion from the safe harbor was "especially clear" when the employer paid a portion of premiums. Id. This ruling clearly does not support Ms. Crabtree's construction that control over contract or eligibility alone was insufficient to compromise employer neutrality. See Postma v. Paul Revere Life Ins. Co., 223 F.3d 533, 537 (7th Cir. 2000) (reaffirming the Brundage-Peterson decision that the safe harbor provision does not apply where an employer determines which employees are eligible to

16

enroll and that this is "even clearer" when the "employer helps defray the cost of the . . . insurance.").

Ms. Crabtree contends that the benefit plan before the Court is most like that in Johnson v. Watts Regulator Co., 63 F.3d 1129 (1st Cir. 1995), because the employer in Johnson did not make contributions to premiums. Instead, in Johnson, the insurance provider "drafted the policy and . . . set the premium rates. The employer provided only minimal intermediary administration of the plan. Additionally, it paid no premiums and "had no hand in drafting the plan" or "determining eligibility for coverage." Johnson, 63 F.3d at 1136. Unlike the employer in Johnson, however, Life Care was involved in crafting the contract and setting the eligibility requirements, and its administrative involvement was much more substantial than was the employer's in Johnson.

For the foregoing reasons, we hold that Life Care's short term disability plan clearly falls within the purview of ERISA and is not entitled to the protections afforded by the safe harbor provision. The Plan thus fails to satisfy the third element requiring employer neutrality. Because Life Care was a party to the contract, assisted in drafting the eligibility requirements, and assumed a substantial administrative role, we conclude, applying well-established Seventh Circuit case law, that Life Care exercised substantial control over the plan as opposed to "merely facilitat[ing]" it. Creel, 2000 WL 1231558, at *4. Accordingly, ERISA preempts Ms. Crabtree's claims and her arguments for remand on this basis fail.

### III.     Defendant's Motion to Dismiss

Life Care has moved to dismiss Ms. Crabtree's complaint because it is preempted by ERISA.  Because Ms. Crabtree failed to tie any of her counts to ERISA violations, Life Care contends that they must be dismissed for failure to state claims upon which relief can be granted.  As explained above, this lawsuit is, indeed, preempted by ERISA.  However, pursuant to well established Seventh Circuit precedent, "pleaders in a notice system do not have any obligation to plead legal theories."  McDonald v. Household Intern., Inc., 425 F.3d 424, 427 (7th Cir. 2005).  The relevant issue in ruling on Life Care's motion to dismiss is "whether relief [is] possible based on any legal theory – ERISA included – under any set of facts that could be established consistent with the allegations."  Id. at 428.   Assuming the facts alleged in the complaint to be true, as we must at this juncture, Ms. Crabtree has alleged sufficient facts to support a cause of action cognizable under ERISA.  Accordingly, we DENY Defendant's Motion to Dismiss and grant Plaintiff leave to file an amended complaint properly pled be reference to ERISA.

### IV.     Conclusion

For the reasons detailed above, we find that Ms. Crabtree's complaint seeks benefits under an ERISA "employee welfare benefit plan," thereby establishing federal question jurisdiction.  Accordingly, we DENY Ms. Crabtree's Motion to Remand.  Futher, based on the facts alleged in her complaint, Ms. Crabtree has stated a claim upon

which relief may be granted; thus, we <u>DENY</u> Life Care's Motion to Dismiss, but shall require her to file an amended complaint properly pled under ERISA on or before April 13, 2009.  We <u>GRANT</u> Defendant's Motion to Strike Jury Demand.

    IT IS SO ORDERED.


Date:  \_\_03/18/2009_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Deer
OGLETREE DEAKINS
thomas.deer@ogletreedeakins.com

John H. Haskin
HASKIN LAUTER  & LARUE
jhaskin@hlllaw.com

Dorothy D. Parson
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
dorothy.koontz@odnss.com

Ryan Patrick Sink
HASKIN LAUTER & LARUE
rsink@hlllaw.com